Good afternoon, Illinois Appellate Court, 1st District Court is now in session. The Honorable Justice John Griffin presiding, 1st Division, case number 1-9-1-6-4-8, General Casualty Company of Wisconsin v. Burke Engineering Company. Welcome. Would the attorneys please both say your name and spell your last name? Yes, Your Honor, good afternoon. My name is J. Paul Derricani. I represent the appellant, Crestwood Residence, under an assignment from Burke Engineering. Would you spell your last name for us? Oh, I'm sorry, D-E-R-A-T-A-N-Y. Thank you. Counsel? Good afternoon, Your Honor. Eileen King Bower, B-O-W-E-R. I represent the plaintiffs below, Appley's here, General Casualty Insurance Company of Wisconsin. Great. Welcome. Okay. Well, you know, you both have 20 minutes. Each have 20 minutes. Sorry. And does the appellant want to reserve some time? Your Honor, I would like to reserve five minutes. I would take 15 minutes in the outset and then five. All right. I think we're ready to start then, Counsel. Thank you. Members of the panel, good afternoon. I hope you're all healthy and well. Counsel, good afternoon. As I indicated, my name is J. Paul Derricani. I represent the appellant, Crestwood Residence, under an assignment from Burke Engineering. I'd like to first address the duty to defend and then secondly address the estoppel issue, if I may. And I'll start with the duty to defend. And I have to say that rarely do we lawyers have the benefit of two Illinois Supreme Court cases that are directly on point and controlling and in our favor. In terms of the first Supreme Court decision, Outboard Marine v. Liberty, the Supreme Court held that the duty to defend was triggered by allegations that they insured discharged chemicals into the water, very similar to this case. Well, wasn't the issue in Outboard Marine where the policy exclusion applied, which is not an issue here? Yes, but I think that there was two very important, there is an important corollary here. There was no stated claim of negligence in Outboard Marine. And they had argued that there was no duty to defend. In the case before you, we had a multi-count, and that analogy remains the same. The Crestwood residents had a multi-count complaint with a very specific negligence count, count five of complaint four, that alleged that Burke Engineering was negligent. The alleged negligence against Burke Engineering was straightforward. They had a duty to disclose that there were chemicals in the Crestwood water. But in the case we have, there were concealed facts. I don't recall in Outboard Marine there being concealed facts. That's correct, Your Honor. So what you say, Outboard Marine is really helpful to your side, yet there's several to me significant differences. I'm trying to understand how Outboard Marine helps your... I see what you're saying. Judge, I would say this, actually, we do allege that there were concealed facts in the allegations of this case, as there was in Outboard Marine, in a separate count. In Outboard Marine, all they said in the complaint was that they discharged chemicals into the water. In fact, I would argue Your Honor's point puts the case more strongly in our favor because they only alleged a discharge of chemical in the water. They didn't really allege... And the fact that they sort of talked about concealed facts, they didn't distinguish between concealed facts. Here, in our case, we had separate counts that distinguished between the two, which is much more factually relevant to the issue of the duty to defend than even Outboard Marine. So in Outboard Marine, the plaintiff, for whatever reason, just said they discharged chemicals in the water. And the court had to basically determine that while there is a duty to disclose based upon that. Now, in our case... It seems as though, and maybe I'm not hearing you correctly right now, but I thought that the issue in Outboard Marine was that it involved a sudden and accidental release of the toxic material, and that there was nothing intentional there. I don't think they distinguished between the two. They just simply said in the complaint that there were discharged chemicals into the water. I think there was an implication in the complaint that it was intentional in some ways. But that's the whole point, is that they didn't distinguish it. And it wasn't clear. And the fact that we're even discussing it shows in Outboard Marine, the complaint wasn't all that clear. And yet, in our case, it was very clear. Very different actors, very different result. In the negligence count here, we didn't argue anything with regard to well number one. We argued that with regard to the conspiracy count, because in the conspiracy count in our case, had the IEPA been notified of well number one, they might have shut it down. And then derivatively, the plaintiffs may not have been injured. That was actually a weaker case than our negligence claim, which was based upon statute and common law. And that was separate from the conspiracy count. And even the parties, Your Honor, argued motions dismiss the negligence count separately from the conspiracy count. Different actors, different subject matter, different allegations. Where do you, in your complaint, say that this was an accident, accidental occurrence? Anywhere? We say repeatedly that it was negligent. Right. But not accident. You know, we're talking about an outboard marine. You're the one that said it's so pertinent. But there, unlike here, accidental occurrence is at issue. We don't have that here. We have intentional conduct. We don't have intentional conduct. We don't. Respectfully. Not with regard to Burke's conduct of disclosure to the public. How can you separate, you know, you can't, the complaint is a complaint, right? So one complaint. And so your answer is, the closer eyes to the fact that all these allegations with regard to the intentional conduct of Burke, that they knew they were involved in it, that they kept it a secret from the public, with regard to what they were doing, that all goes out the window? No. In fact, a jury could say that Burke Engineering deliberately hid the use of well number one. And had they not hid the use of well number one, the chemicals wouldn't have been in the water. Or the jury could say, you know, they didn't conspire to hide the use of well number one, but they were supposed to disclose chemicals in the water. And let's say, Your Honor, that chemicals came from Lake Michigan, or another well, or Peru. I use it as an absurd example. But wherever the water came from, they had a duty to disclose. That wasn't intentional. That wasn't deliberate. They may have conspired with a second party, with Crestwood, to save money on the water bills for well number one, but that's a very different fact pattern than not disclosing, when you act as a quasi-governmental body, not disclosing that there's chemicals in the water. Our case is stronger than that. And then we look at the Wilkins case as well, the second Supreme Court case, and let's talk about that because it ties in with Your Honor's question. In Wilkin, the underlying plaintiffs allege a claim for property damage against a contractor for installing asbestos. Everybody knows asbestos was dangerous. And the Supreme Court, and the insurer refused to defend because they said, since the insurer knew that asbestos was dangerous, there could be no negligence and no occurrence, like what the insurer said, in our case, 23 months too late. In Wilkin, the Supreme Court said that despite the fact that the underlying plaintiff didn't have a separate negligence count, didn't even have one that we did, the lower court should have parsed through the allegations and determined that the existence of the possibility of negligence triggered the duty to defend. And I ask the court, and I ask appellee, if the duty to defend is present in a situation in which asbestos was deliberately installed in a building, but then how could we not say that at least here there is a separate negligence count and there is a potentiality of coverage? Our case is stronger. We had a separate negligence count, we preserved it, we argued for it, and we had two bases of negligence, common law under Wisniewski and the statutory requirements under the statute we cited, that an engineering firm acting in a quasi-governmental capacity has a duty to disclose. You know, this court in International Minerals versus Liberty, a first district case, said it well, that as long as the allegations do not make coverage an impossibility, there's a duty to defend. In June of 2013, the Crestwood plaintiffs filed a complaint alleging in count five that Burke Engineering was negligent because they failed to disclose the chemicals. Count six was a very different count in which we allege that Burke worked with village supervisors to hide the use of well number one, a very specific well, and that if that well had not been hidden, then the IEPA would have inspected and shut it down. A derivative count, different claims, different parties, different conduct. Now Apelli argues in the trial court basically said, our negligence claims were not viable. I disagree and think they were more viable than a conspiracy count, but whether you think that, whether this court or Apelli thinks that Wisniewski, that I was wrong in the Wisniewski, interpretation of Wisniewski, a common law case, or whether I was wrong in citing the statute, the negligence, arguing that the negligence count was not viable misses the mark because the standard isn't whether it is viable or whether I'm going to get summary judgment granted against me in the case or lose on appeal or so forth. It is whether the allegations could or may trigger coverage. Even if the allegations, your honors, are false or fragile, it triggers a duty to defend. If we do not accept this argument you are making, you lose. Is that correct? I'm sorry? If we do not accept your argument that you are now making, you lose. No, because we still have the second basis of appeal, which is that they should be stopped from even arguing they had no duty. If they had no duty to defend, why did they have a stopple? Because, well, I believe that they did have a duty to defend, but they should not be. But they wouldn't have, see, if you don't win the first argument, you don't get to the stopple. I mean, that's the law seems to be pretty clear in that. So, I mean, you need to win your first argument. Otherwise, I'm just trying to test your argument, but it seems to me that that is your the guts of what you're saying, because if you can't, that's your what your lifeline for this case. Otherwise, nothing else will attach. Well, our lifeline is based upon Illinois and Moscow and the case law. But when you say if we don't if you don't accept our argument, we lose. I suppose I don't if you mean, do you have to accept that there is a common law cause of statute for a duty to disclose? No, I don't think that that's the case. I think the case is whether or not I stated any basis, even if you think my basis for alleging a duty was not correct or was really far off the mark or that I misinterpreted Wisniewski completely, although I don't think we did. Wisniewski involved the case of if an archdiocese can be liable for the conduct of towards its parishioners of praise. And I certainly think that Burke engineering could be liable as well for its common law duty. Plus, there's a statute. But getting back. Oh, God, I'm sorry. No, go ahead. But the standard isn't whether or not I'm right or wrong as to the duty. The standard is whether there's any basis and whether it's not an impossibility. Um, let me just ask you, because this is on that point, paragraph 50 in your negligence count of complaint number four, defendants by and through their agents breached their fiduciary duty by failing to disclose to disclose the harmful chemicals in the water to public. And you're saying that that alleges a negligent act as opposed to an intentional act? Yes, because of two reasons, and the prior and at the top of the count, it says it's count five negligence. Burke engineering. We know that that's not you can call it whatever you want, but OK, go ahead. Well, under paragraphs one through we repeat paragraphs one through 48, which is that the defendant had a duty to inform the public about the truth of toxic chemicals in the water supply and that they breached their fiduciary duty by failing to disclose a harmful chemical. Now, as you may recall from the in its replete in the record, I had sought to amend the complaint and was denied leave to amend now that it doesn't mean that it wouldn't be or I'm sorry, I'm using the wrong term as the insurer admitted in deposition. They knew that there was a potentiality of further amendment and appeal on that issue. We believe we had two bases under Wisniewski and under the statute requiring a quasi governmental body to disclose chemicals. Burke engineering had a duty to disclose the chemicals in the water. They may have made a mistake in doing that, and they may be liable under conspiracy and this, but or they may not be liable for conspiracy. They could a jury could say you didn't conspire, you didn't do anything wrong, but your secretary left the notice requirement on the desk or you failed to disclose. You didn't understand your duty and you failed to disclose to the public and you were acting under a quasi governmental situation. So for 23 months, they didn't do anything. Now, the second basis of appeal is important because they should be stopped for two reasons. They made several admissions that they may have a duty. Two times they stated that there's a potential Burke could or should be covered. And secondly, they had an intentional 23 month delay, which I don't think the courts and this court should reward in a deposition council admitted he didn't know if there's a duty to defend. And yet they didn't provide coverage even under a reservation of rights. And that's what our court case after case, the court keeps saying, you must preserve your rights. You must have a reservation of right. And the Supreme Court and Wilkin even said, your honor, if even there's a dispute or question of coverage, then that triggers a duty to defend. And that goes back. And I don't think it does depend on the duty existing to begin with if that's the case, because I think Judge Hyman brought that out. And I think that the point is that if there's a question of or dispute of coverage, which they admit to that an obligation to provide coverage, they could have filed a declaratory action 23 months earlier or they could have preserved under a reservation of rights. If the case goes in the favor of the insurer in this case, they will be allowed to engage in conduct, which they did in this case, wait 23 months by the sidelines, which is exactly what the court in West American Insurance versus J.R. Construction said is not appropriate. You cannot sit by the sidelines and and stand on the sidelines simply because another insurance company performs its contractual duties or you're waiting to see what happens. On your estoppel argument, I'll try it again. The Illinois Supreme Court in Employers Insurance of Wausau, it's a 1999 case. You agree with this, isn't it? I'm quoting the Supreme Court. Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend or if the insurer's duty to defend was not properly triggered. Yes, I understand, I do agree that that was the holding and I but I would just put a twist on that, which is simply that if they've admitted and that case didn't involve that, but if they admitted that they had a dispute or question of coverage, then I think that would trigger the duty to defend. So I understand that there could be some. In what case are you relying? Any case particularly? In Wilkins said if there's a dispute or question of coverage that triggers a duty to defend. So where a there's no case that specifically says if they admit it. Also, counsel, just be careful because even you're you're you're allowing it and you're even conflating the two issues of duty to defend and actual coverage. Don't conflate those issues. Make it clear what you're arguing. I see what you're saying and I apologize. Make it clear. And thank you for pointing it out. And I think both you and justices are doing so. Make it clear what you're arguing because there's a there's a distinction. Yes, I agree that we don't get to the second issue if you find that there's no duty to defend as to. The delay in a stop, but I do think that to put a fine point and clarify that if there's a question of coverage, then it triggers the duty to defend. So I thank you, Your Honor, for pointing out. I didn't mean to sound circular in that regard. So I do agree with that. But, you know, in West American Insurance versus J.R. Construction, the first district rejected the argument that waiting 24 months was acceptable because they were an excess carrier. This was the exact same argument the general casualties offering to this court and also found not to be valid. No builder case. But the bottom line is there's only a one month difference between this case in West American versus J.R. They waited 24 months. They didn't. They refused coverage. They refused to pay defense costs. They refused to even pay for a mediation fee despite being asked repeatedly. They showed up 23 months later just to serve a declaratory judgment action and a mediation. This is bad faith conduct. And the precedent, I do not think, would allow for that kind of conduct. I wanted to preserve my five minutes and I don't know where I am with time. Yeah, you're pretty much out of time. Are we OK? Go. OK. Thank you very much. Thank you. Counselor, Ms. Bauer. Thank you, Your Honor. The first pleading in this matter, the underlying cases naming Burke as a defendant was the Fourth Amendment complaint. And the very first allegation in that pleading in paragraph one states this complaint arises out of the concealment of contaminated water to the village of Crestwood. That's what the underlying case was about. It was about Burke Engineering, the village of Crestwood, and certain village officials involved in an incredible scandal. They were actually conspiring to use a well they knew was contaminated. But, Counselor, you realize that that's just an allegation. I mean, sure, that's what the complaint says, but all the complaint represents is an allegation. Very often, plaintiffs put their form of their complaint in the form of an allegation that makes it sound a whole lot worse than what it really is. And if a plaintiff simply says that, oh, there's fraudulent concealment and there's concealment and da, da, da, da, that doesn't mean that that's actually what exists. Very often you see those in basic negligence claims. So, again, the issue here, I think, is whether or not there was a duty to defend, not whether or not there was actual coverage. That's a different question. Ultimately, there may not be any actual coverage, but that duty to defend may have still been there. Let me address that. Normally, we would go forward with a reservation of rights. Well, an insurance company, if I could take it in pieces, you are absolutely correct that the question here is whether the underlying complaints alleged a duty to defend, which is a separate question than whether there is a duty to indemnify.  In making that determination, Illinois law is clear on several points. First, Illinois courts do not consider the label placed on a theory of recovery in determining whether a duty to defend is triggered. In other words, the fact that there's a, quote, negligence claim pled is not determinative of whether the duty to defend is triggered. Rather, Illinois courts look to the factual allegations concerning the conduct that the insured is alleged to have engaged in that gave rise to the underlying plaintiff's injuries. And the case law is quite clear. It's the allegations with respect to the conduct of the insured. That's the focus. Illinois law is also very clear that courts are not limited to the allegations contained in particular counts in determining whether the duty to defend is triggered. The allegations of the complaint must be read as a whole. And again, the focus is on whether the conduct that the insured is alleged to have engaged in, which gives rise to the underlying injuries, falls within or potentially within the coverage of the policy. So here we have general liability policies that are triggered by bodily injury arising out of an occurrence. And I think we can all agree occurrence here is defined both in the policy and understood under law to be an accident. It's something that's unforeseen. So in order for these underlying lawsuits to trigger a duty to defend the fact in those suits, what's alleged some conduct that that is accidental or potentially accidental. And here they allege the opposite. Each and every one of the underlying complaints alleges that Burke concealed the use of a contaminated well, that Burke knew the well was contaminated, that Burke advised the village that it should conceal leaks and it should conceal the contaminate, conceal the contamination so that Burke and the village together could work to use the well, pump water into residents' homes and save money. I mean, it's, it's, that's what the case is about. This, this is an incredible intentional, uh, scandalous kind of situation. It's simply not a situation where Burke is alleged to have conducted any activity that could in any way, shape or form be considered accidental. The allegations that Mr. Derritani has pointed to are really allegations of the, the elements of a negligence cause of action, duty and breach of duty. Those aren't factual allegations. Those are elements of a cause of action. Causes of action based on negligence are usually based on duty and breach of duty, but they don't talk, those don't go to what the conduct is. And that's the focus. We have to look at what the conduct is that the insured allegedly engaged in. And the amended, the complaints starting with the fourth, going on to the fifth and lastly, the sixth complaints, which named Burke as a defendant are replete with allegations that Burke knowingly and intentionally, fraudulently conspired with village officials to conceal the use of a contaminated well to supply water to village residents, knowing that it was contaminated because they wanted to save money. So there's no other way to construe it. No other way to look at it other than the conduct they engaged in was intentional. What's your response to the use of outboard marine? And that is clearly, they said, he said that it's better. This case is better than outboard marine. And actually, I don't think outboard marine supports the claimant's position. I think it actually supports general casualties position in total. Outboard marine, as you noted earlier, involved whether the allegations of the complaint against the insured, their outboard marine fell within a pollution exclusion. And in that case, there's a, there's a pollution exclusion, a lot of general liability policies that has an exception for sudden and accidental releases of pollutants. So the allegations against OMC in that case were that OMC discharged pollutants into Waukegan Harbor over a period of time. And the lower court found that the pollution exclusion and the exception, the sudden and accidental exception, meant that any release had to be abrupt in order for the exception to come into play. The Supreme Court said sudden means unexpected or unintended. And within that, within that interpretation, it was an interpretation the Supreme Court found was different than the lower court. And they said, okay, now we have to look at whether the allegations against OMC are intentional. And they said, and I'm quoting here from the opinion, nowhere in these complaints is there any allegation that OMC intended or expected to release PCBs into Waukegan Harbor or Lake Michigan. In the absence of such an allegation, the underlying complaints allege facts that fall potentially within the coverage of the policies. So there, there was an absence of any allegations of intentional discharge for OMC. They have a duty to defend. Here, the underlying complaints are replete with allegations that Burke knowingly, fraudulently, intentionally conspired with village officials to conceal the use of a contaminated well. So we don't, it's a completely different situation than OMC. OMC said there are no allegations of intentional conduct. Here, there are numerous allegations of intentional conduct. And we can go through and I can identify, I know we've done it in our papers, but, you know, I can identify in the record here, I'm sure you've seen it in the fourth, fifth, and sixth amendment complaint, the allegations of intentional conduct. There were a couple of points that I just want to address that Mr. Daratani touched on. One was, was the first that I just mentioned, which is the label negligence, the fact that a negligence count is included in the pleading does not trigger a duty to defend. But second, if there's a question or dispute as to coverage, I believe he said that that would trigger a duty to defend. And that simply is not right. Under Illinois law, a dispute as to coverage does not give rise to a duty to defend. Otherwise, I think we'd have a lot more cases where we have defense obligations because lawyers are always going to dispute whether there is one or not. But it's, again, I go back to it, the allegations of the underlying complaint. What are the factual allegations that are put? So in this case, there's just simply no question that the allegations in the underlying complaint are simply intentional. They say that Burke Engineering concealed the use of a contaminated well. They knew it was contaminated. They worked with the village to conceal that use. To argue that allegations that Burke had a duty to disclose to residents and somehow failed to comply with that alleged duty can change concealment into something different, something accidental. It just doesn't make any sense. And we've cited in our brief situations where there's clear intentional conduct. I think one of the cases we cited was, it's a more extreme example, but I think it really makes the point. The Farmers Automotive Insurance versus Danner case. And that's one where the defendant, in a fit of rage, drove his truck  to a neighbor's yard and caused injury. And the neighbor's neighbor's car was found to have been a good driver. A lawsuit was filed by the neighbor, including two counts, negligence and intentional conduct. And there, the court said, you know, you can't dress up the facts here in a way to have a negligence claim that's going to trigger a coverage obligation or a duty to defend. When you, you know, in a fit of rage, drive your truck into your neighbor's yard and cause injury, that's intentional conduct. And no matter what you want to call it, no matter what theory of liability you try to attach to it, you can't change the fact that it's intentional conduct and it's uninsurable conduct. It's the same situation here. Couldn't be more clear what the claim against Burke was all about. Burke was involved in conspiring with village officials and fraudulently concealing the use of a contaminated well, and its conduct is simply uninsurable. It does not fall within, or potentially within, the insuring provisions of the policy. And that's why there's no duty to defend. A couple of other points I wanted to point out. You know, I know there's been a lot of discussion by the claimants about the negligence claim and what it alleged or didn't allege, and the Fourth Amendment complaint versus the Fifth Amendment complaint. The Fifth Amendment complaint, the negligence claim, they're right in the body of the negligence count, actually specifically alleges intentional conduct. But in the reply brief, there was an argument made that general casualty confused the allegations directed to Burke and the allegations directed against the defendants. But the complaint uses interchangeably Burke and defendants, and the word defendants, even when there are specific counts only directed against Burke. So, I'm not quite sure what the argument is intended to be or the point that's intended to be made in the reply brief in that regard. But I think to the extent that the allegation or the argument is that the negligence count in the Fourth Amendment complaint, which includes factual allegations against close defendants, was not meant to be attributed to Burke. If you look at the negligence count in the Fourth Amendment complaint that's labeled Burke, the allegation against Burke is that Burke had a duty, and the next sentence says defendants breached the duty. So, either Burke is a defendant that is involved with all the other defendants in breaching the duty, or all that was pled was that Burke had a duty and someone else breached the duty. So, I just wanted to make that point clearly because it was in the reply brief, we didn't have a chance to address it afterwards. If I could just address the other issues that were involved in the case. And I think, Judge Hyman, you've hit on this a bit, if there is no duty to defend as a circuit court found, then under Illinois law, there is no duty to indemnify. And if there's no duty to indemnify, well, if there's no duty to defend, there's also no estoppel. And estoppel cannot create coverage where it does not otherwise exist. That's very clear under Illinois law. So, it is true that the duty to defend issue, if the circuit court was correct here, and of course, we believe that the circuit court was correct, that is the end of the inquiry. If there's no duty to defend, there's no estoppel, there's no duty to indemnify. And under Illinois law, there's no bad faith in the absence of coverage. So, all of the claims asserted by the claimants here fall away if this court agrees with the circuit court that the allegations of the underlying complaint simply did not trigger a duty to defend because there was no conduct of the insurer that was alleged that could fall within or potentially within the insuring agreement of the policy. And also, that conduct fell squarely within the expected or intended exclusion. And just maybe I'm misunderstanding this, but the estoppel, is that having to do with the insurance company saying potential coverage, potential liability? And couldn't the estoppel apply to, not to the coverage, but to the duty to defend? Couldn't they be saying, well, if there's a potential liability, that gives you a duty to defend? When I think of estoppel, I typically think of it in connection with a breach of a duty to defend where courts have said if an insurance company takes the position that it does not have a duty to defend and is later determined that that position is incorrect, if the company didn't do something to protect itself, like file an action for declaratory judgment or defend under reservation rights, it can be a stop from raising coverage defenses, like exclusions. That's what estoppel, that's what I typically think of as estoppel. There was an argument raised by the claimants in their papers that General Casualty admitted that there was a potential for coverage. And I think a close reading of the record sites that were cited to support that argument indicates that there were several letters that General Casualty's lawyer and General Casualty had coverage counsel and Burke had coverage counsel. So, the coverage lawyers had letters going back and forth. But the position of General Casualty was that there was another insurer defending which made its defense obligation excess. And General Casualty specifically in its coverage position letters that the allegations of the Fourth Amended Complaint and the subsequent complaints did not fall within the insuring agreement of the policies because they did not allege an occurrence. The word potential is used in at least one of those letters. It might have been used a couple of times, but it certainly, there was certainly never a statement by General Casualty in any letter to Burke indicating that General Casualty had a duty to defend or that the allegations of the complaint potentially fell within the coverage. That's simply not in the record. Okay, thank you. Does anybody have anything else? Your Honor, do I have a couple of minutes? Let me just make sure that, okay, we have nothing else for the appellee. Okay, thank you. Go ahead, sir. I'm sorry, Your Honor. This Zoom stuff is a little more difficult for me. Yes, it is. Yes, it is. It's true. Your Honor, I just, I want to address first what counsel said about in the body of the complaint, she said, that we do not talk about facts, which would equate to negligence. And again, and I want to quote the specific paragraph 50, which says, defendants by and through their agents breach their fiduciary duty by failing to disclose the harmful chemicals in the water. And counsel says it acts as though we've proven our fraud claim and they said the conduct is terrible what Burke did. The conduct with respect to a particular well may have been terrible or we may not have been able to prove that count. It could well be that the court or a jury could say, no, you didn't prove that they were in a conspiracy as it's a high burden, a conspiracy to hide the use of a particular well. That's a physical structure, the well. What we're talking about with regard to the negligence is all of the water. Let me ask you, with regard to the negligence count in the fourth amendment, that incorporates everything above it, right? It states that paragraphs 1 through 40 some are. Yeah, are all incorporated. So all the factual allegations that come before it are part of that. And so we can't close our eyes to those factual allegations. And the factual allegations indicate intentional conduct. So you're asking us to say, well, those first 49 paragraphs don't exist. And we are only to look at one line. Is that what you're saying? I don't think so. No, Your Honor. I think the complaint as a whole, because you've incorporated all the allegations that come before it into the negligence count. Well, interestingly, in U.S. versus Wilkin or in the outboard marine case, you know, we could say that the complaint wasn't parsed out correctly. And the court said the lower court should parse through the allegations. So if you want to say that we didn't, we mixed in intentional allegations with negligence allegations, you could say that. You could say that we should amend to be more specific. But the bottom line is, even if we have just one line that says, and by the way, the defendant in the underlying case was supposed to disclose any chemicals that were in the water. By the way, they didn't have to be in the well. When the end user turns the water on and there's chemicals in it and they know about it as a quasi-governmental body, they had a duty to disclose. Therein lies the negligence. And it very specifically is an omission. Obviously, you don't have typically conspiracies based upon omissions or even Wilflin-Watt misconduct usually based upon omissions. And yet, very specifically in the negligence count, we stated that they omitted to disclose or they failed to disclose that there were chemicals in the water. Burr could have been terribly conspiratorial to save money by hiding the use of the well, or they may not have been. That still doesn't excuse the fact that they failed to disclose chemicals in the water wherever those chemicals may be. So, if you want to say, if you want to look at the totality, I think we can look at the set, both the totality and the, I'm sorry, Judge. Well, again, your argument doesn't go to the totality. You can't have it both ways because the law says, you're the one that granted the complaint and you incorporated everything. So, we cannot, we have to take the facts as you've pledged them. And that's why the judge said that he cannot contemplate any scenario here where they'd have a duty to defend. He said that as an opinion. So. Well, that was Judge Hogan. And that was with regard to the Wisniewski allegation. And had we not, just to put a fine point on your set, if the allegations of negligence were so intertwined with the allegations of fraud, why would we have a separate motion just to argue the negligence count? The court considered and they heard argument. And we, and Judge Hogan decided, I didn't have enough for the negligence count based upon Wisniewski. And then I said, well, what about the statute? And he said that you didn't really state the statute sufficiently enough. Now, he granted it with prejudice, but I believe that I would have amended to name, and it's clear in the record in the depositions, I would have amended to name the statutory cause of action, which was there's a specific statute that requires disclosure of chemicals in the water. Regardless of what they did with well number one, the hiding of a physical structure is very different. And to save money on a bill is very different than the duty owed not to IEPA, which would be the fraud count, but to the duty owed directly to the consumers of the water. And I submit you would be going directly against U.S. versus Wilkin and Outboard Marine if you decide to that somehow our complaint, even if it does have interspersed allegations, that it somehow goes against the drafter of the complaint. When it's fairly clear, at least in that allegation that we said negligence and that they omitted to do certain conduct. So, you know, with that said, I think that we've at least made the minimum. The allegation of negligence and the duty to defend was not impossible. In other words, the allegation was possible. Even if you think it was a low chance of winning that allegation, it was a possibility, and therefore under International Minerals versus Liberty and the Supreme Court cases, there was a duty to defend. Thank you. You and counsel seem to disagree on the state of Illinois law, and that is if there's a question or a dispute regarding coverage, then according to you, there is a duty to defend. And according to counsel, that does not create a duty to defend. Is that your position, that there is a dispute? I'm looking for the actual quote, because I believe it's in either Illinois Amasco versus New National Casualty, and I hope I'm not wrong, or I know it's in one of the cases, or West American Insurance versus JR Construction. No, it wasn't. I'm sorry. It wasn't in West. I'm trying to look for the exact quote. I wrote down the quote, so to speak, but where there is a question of coverage, and they're raising it. They did say twice that, you know, two times, and I cite it in our reply brief, where the defendant says, and general counsel for general casualty admitted that he didn't know if there was a potential for coverage in his deposition. I'm sorry. Here it is, Wilkin. If there's even a dispute or question of coverage, then that triggers a duty to defend. So, if the defendant, if, I'm sorry, I'm getting a defendant, I'm usually on a plaintiff side. If general casualty says in deposition and says in correspondence, well, there's a question of coverage, or, you know, we don't think there's coverage, but, well, there might be coverage, then that goes in the favor of the insured. And the reason for that is we don't want what occurred in this case to occur where somebody sits on the sideline for 23 months. If we think as plaintiff's lawyers that there's no possibility of insurance, why would we spend time within the court system to argue, we're clogging up the courts with cases in which there's no possibility of recovery because we can't squeeze blood out of a rock. And I think that's the very purpose of these cases is to say, no, insurance companies, you must abide by the law, and if there's a question or dispute, you provide the duty to defend, and you give a reservation of rights, or file that lawsuit right away asking for declaratory relief, don't sit on your hands for 23 months. I'll admit to you that that's my understanding of the law as well. Thank you, Your Honor. If there's no further questions, I'm finished. Okay. Well, thank you very much. Thank you both very much. Excellent job. We really appreciate your work, and we'll be taking it under advisement, and you'll be hearing from us soon.